HALL, Judge.
Plaintiff sued Colonial Buick, Inc., for damages arising out of an incident in which her automobile left the roadway of the Pontchatrain Causeway and crashed into the side rail thereof. She alleges “that the accident was caused by a defective left lower control arm having been installed in the car originally, or by the failure and negligence of defendant to repair said control arm on November 2, 1960, after a rattle or vibration was reported to them (sic) by petitioner.”
Plaintiff sustained no physical injuries in- the accident but avers that as a .result thereof she sustained a conversion reaction manifested by a condition known in psychiatric circles as “hysterical aphonia,” or loss of voice, which causes her great mental anguish and has resulted in business losses.
The District Judge rejected plaintiff’s demands and dismissed her suit on the ground that she failed to meet the burden of proving the cause of the accident and that the cause was attributable to an act of negligence or breach of warranty on the part of defendant. Plaintiff appealed.
The record shows that on November 2, 1960 plaintiff brought her 1958 Buick automobile to defendant’s service and repair department “to correct rattles in the steering.” Defendant’s mechanic checked the steering column and replaced a part therein. He also checked and adjusted the brakes.
Plaintiff picked up her car the following day and it is clear from the record that the rattle had been corrected and was never again complained of by plaintiff.
The accident occurred on November 18, 1960. No other cars were involved and the only person having any knowledge of what occurred is the plaintiff herself. She testified that she left her home in Covington about noon to come to New Orleans via the Pontchatrain Causeway; that the weather at that time was fair and the roadway was dry; that as she went over the 12 mile “hump” something occurred to the steering mechanism of the car which caused the car to veer to her left across the roadway and to strike and scrape along the curb of the narrow walkway on the left *273 of the Causeway and then to veer to the right across the Causeway and to strike and mount the curb on the right hand walkway and crash into the railing. She further testified that she got out of the car and found that the front wheels were spread out at the bottom and that something was hanging down between them, and that on looking around she found a “scratch” mark on the concrete of the roadway which traced the route her car had taken first to the left and then to the right indicating that something on the car had been dragging. She remained on the Causeway for several hours presumably waiting for the police, although it is not clear that they were ever notified of the accident. During this wait it began to rain and she got wet and according to the history she gave Dr. Eugene Usdin, the psychiatrist who treated her, she experienced a “massive rage.”
Plaintiff commenced to get hoarse and a few days later lost her voice completely. After consulting many throat specialists, none of whom could find anything organically wrong with her voice mechanism, she was referred to Dr. Eugene Usdin, a psychiatrist, who diagnosed her condition as a “hysterical psycho-neurosis which is manifesting itself in the symptom of aphonia, inability to speak.” He further stated that it was a conversion reaction precipitated by the excitement of the accident and her subsequent wetting and “massive rage.” She has never fully recovered, and, as noted by the District Judge, she now speaks in a “raspy whisper.”
Upon being notified of the accident defendant had plaintiff's automobile towed into its shop and repaired it. The repairs consisted essentially of the replacement of the “left lower control arm.”
Plaintiff’s theory of the case is that defendant negligently repaired or negligently failed to repair or replace the left lower control arm on November 2nd and that the accident happened when the control arm broke causing the automobile to go out of control.
The record shows unequivocally that the repairs effected by defendant on November 2nd had nothing to do with the left lower control arm. Plaintiff had complained of a rattle in the steering and asked that it be corrected. No reference was made to the control arm. The rattle complained of was found in the steering column and was corrected by replacing a part therein. Nothing else was done to the car except to adjust the brakes. Plaintiff theorizes that possibly the bolts securing the control arm had worked loose and that, due to the proximity of the lower left control arm to the left front brake drum, defendant’s mechanic should have observed and corrected the condition when he adjusted the brakes. That the bolts had worked loose is pure speculation on plaintiff’s part.
When defendant repaired the automobile following the accident it replaced the left lower control arm and we assume from that that it was damaged.
Did it break or in some manner come loose and cause the accident or did the accident cause the damage to the control arm? If it caused the accident, was its conditon attributable to an act of negligence on the part of the defendant?
In his Reasons for Judgment the Trial Judge said:
“ * * * It is as reasonable to assume that the accident caused the damage (to the control arm), as it is to assume that the damage caused the accident.
“The plaintiff testified that the road surface of the Causeway was marred by ‘scraping’ marks. Presumably, these marks in the concrete are offered to prove that the control arm was dragging along the highway even before the accident. The plaintiff’s testimony is not convincing that such marks even exist. They were quite vivid in the plaintiff’s memory on the dates of the trial, but, curiously, she failed to mention them when relating the circum *274 stances of the accident at her deposition on December 13, 1961. In any event, the mere presence of these marks on a heavily traveled highway is far from sufficient to show that the control arm broke and caused the accident.
“Obviously, the most significant evidence would have been the ‘left lower control arm’ itself, but unfortunately, it was not available. Mr. Vernon Gaiennie, the President of Colonial Buick Company, testified that it is his company’s practice to dispose of all scrap metal parts about once a week, so the control arm was no longer in the defendant’s possession. I draw no unfavorable inference from the disposal of the control arm by Colonial Buick. Certainly, at that time, there was no way of anticipating this litigation, and Colonial Buick is under no obligation to retain used and damaged parts.”
On the question of plaintiff’s credibility the Trial Judge had this to say:
“The plaintiff has asked the Court to ascribe to her accident and to the events that followed her ‘hysterical aphonia’. She has presented a psychiatrist whose opinion substantiates this position, but by his own admission, the doctor does not accept at face value everything the plaintiff tells him in consultation, and, in fact, has sometimes adopted as a working premise the exact opposite of what his patient has told him. Such testimony cannot help but reflect on the credibility of plaintiff’s testimony in general.”
As to defendant’s negligence vel non the Trial Judge stated:
“Even if plaintiff had established the exact cause of the accident, she failed to show any act or failure to act on the part of the defendant that could be construed as a breach of a duty owed to the plaintiff. When the plaintiff brought her car to Colonal Buick on November 3, 1960, she asked that a ‘rattling’ noise be repaired. No specific reference was made to the control arm. Colonial Buick simply agreed to fix the ‘rattling’ noise and this apparently was done. The proximity of the 'left lower control arm’ to the left front brakes that the Colonal Buick mechanic worked on is of no consequence in determining the liability of the defendant. When a mechanic contracts to repair a defect in an automobile he does not impliedly contract to inspect and repair tire neighboring parts. I believe that Mr. Jack Horn-rich, the mechanic, was competent to make the repairs that he made, and complied in every respect within the contract undertaken by his employer.”
The Trial Judge concluded as follows:
“In order to establish a case of liability on the part of Colonial Buick Company, plaintiff had to prove, first, what caused the accident, and second, that that cause was attributable to an act of negligence or breach of warranty on the part of Colonial Buick.
“In the opinion of the Court, plaintiff has failed to meet either burden. * * * «
After a thorough study of the record we are of the opinion that it not only fails to disclose any manifest error in the Trial Court’s findings and conclusions but that it supports them in every particular.
Plaintiff endeavors to shift the burden of proof to defendant by invoking the doctrine of res ipsa loquitur.
The record shows that the automobile was in the exclusive possession and control of plaintiff during the fifteen days which elapsed between the date defendant repaired the steering column and the date of the accident and that during this time she had driven it over nine hundred miles. There is testimony to the effect that a pos *275 sible cause of damage to the control arm would be if the car had hit a rock or some other object on the highway. It is also possible that the control arm was damaged by the accident itself.
The doctrine of res ipsa loquitur is inapplicable to a case unless the facts and circumstances thereof reasonably exclude every other cause of the accident except those causes which can be attributed to the negligence of the defendant. See Gershner v. Gulf Refining Company, La.App., 171 So. 399; Morales v. Employers’ Liability Assur. Corporation, 202 La. 755, 12 So.2d 804. The circumstances of the instant case are not such as to create an inference that the only cause of the accident was the defendant’s negligence.
For the foregoing reasons the judgment appealed from is affirmed..
Affirmed.