230 P.3d 718

**Joseph Bryant DIAZ; Joseph Diaz, Jr., Patricia Diaz, Plaintiffs/Appellants,**

v.

**PHOENIX LUBRICATION SERVICE, INC. dba Jiffy Lube, Defendant/Appellee.**

**No. 1 CA–CV 09–0034.**

Court of Appeals of Arizona, Division 1, Department E.

May 4, 2010.

Coben & Associates By Larry E. Coben, Scottsdale, Attorney for Appellants.

Carnahan Perry Hanlon & Hudson PLC By Christopher M. Hanlon, Michael R. Perry, Phoenix, Attorneys for Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 During a routine oil change and service job, did Phoenix Lubrication Service, Inc., dba Jiffy Lube ("Jiffy Lube") owe Plaintiffs a duty to perform a safety inspection of the tires of Plaintiffs' vehicle and to warn of any dangerous tread wear? We answer this question in the negative, and we therefore affirm summary judgment in favor of Jiffy Lube.

## BACKGROUND

¶ 2 On October 30, 2004, Plaintiff Joseph Bryant Diaz ("Bryant") took the Volvo owned by his parents, Plaintiffs Joseph Diaz, Jr. and Patricia Diaz, to a Jiffy Lube for an oil change. The oil change service purchased by Bryant included, among other things, a check of the Volvo's tire pressure. Jiffy Lube does not sell or replace tires, but does offer a separate tire rotation service and inspection for an additional fee. Bryant, however, purchased only the oil change service and does not recall asking Jiffy Lube to perform any work on the Volvo's tires or to inspect the condition of the tires.

¶ 3 A few weeks later, on November 21, 2004, Bryant was driving the Volvo on East Mayo Boulevard near the 56th Street intersection. It had been raining and Bryant lost control of the Volvo as it traveled over a wet portion of the road. The car traveled off the road and rolled over. As a result, Bryant suffered serious injuries, including paralysis. Plaintiffs assert that the worn condition of the tread on the inside portion of the Volvo's rear tires "caused or contributed to the underlying accident."

¶ 4 On June 29, 2005, Plaintiffs filed a complaint against Defendants Ford Motor Company, Volvo Car Corporation, Volvo Cars of North America, LLC., Volvo Cars of North America, Inc., and Discount Tire Company. The complaint contained, among other allegations, a strict products liability claim against Ford and Volvo for defective design "regarding [the Volvo's] handling characteristics, roof structure, and seatbelt restraint system."

¶ 5 Plaintiffs also alleged a negligence claim against Discount Tire. Specifically, Plaintiffs alleged that the Volvo had been taken to Discount Tire in July 2004 to have its rear tires replaced. According to Plaintiffs, Discount Tire did not properly inspect the rear tires to determine the existence of wear patterns that are symptomatic of suspension and alignment problems. This omission allowed "the [Volvo] to be released for use with a known handling problem that caused significant and dangerous wear patterns on the rear tires." The wear pattern allegedly caused the tires to achieve less traction, making the Volvo dangerous for use on wet roads.

¶ 6 In March 2006, Plaintiffs amended their complaint to include UAG Phoenix, LLC, dba Volvo North Scottsdale ("UAG"). Based upon allegations set forth in Discount Tire's notice of non-party at fault, Plaintiffs alleged UAG serviced their Volvo on September 29, 2004 and November 5, 2004 and negligently failed to inspect the Volvo's tires. UAG named Jiffy Lube as a non-party at fault, alleging that Jiffy Lube "breached its duty to examine the [Volvo's] tires in an appropriate manner" during the October 2004 oil change. Plaintiffs initially opposed UAG's notice of non-party of fault and moved to strike UAG's notice. In their motion, Plaintiffs stated that UAG "has no evidence that Jiffy Lube had a duty to inspect in the inside surface of the tires on the [Volvo]."

¶ 7 After the denial of their motion to strike UAG's listing of Jiffy Lube as a non-party at fault, Plaintiffs amended their complaint to add Jiffy Lube as a defendant. Plaintiffs claim Jiffy Lube was negligent because the service Jiffy Lube performed on Plaintiffs' Volvo "included or should have included a check of the [Volvo]'s tire pressure, an examination of the tires on the [Volvo] and notification of the tire wear." According to Plaintiffs, when the Volvo was parked over the service bay, the Jiffy Lube technician underneath the Volvo who was changing the oil should have observed portions of the Volvo's rear tire treads.

¶ 8 All of the Defendants except Jiffy Lube were eventually dismissed from the action. In July 2008, Jiffy Lube filed a motion for summary judgment asserting that it did not owe Plaintiffs a duty to inspect the inside tread of the Volvo's tires. The court denied Jiffy Lube's motion on the basis that it was not timely filed. The court stated, however, that at trial it would likely "adopt Jiffy Lube's position that it did not owe a legal duty to [Plaintiffs]." Consequently, both parties agreed that the motion for summary judgment should be submitted to the court for reconsideration. The court agreed to reconsider the motion and then granted it.

Final judgment was entered in January 2009 in favor of Jiffy Lube.

¶ 9 Plaintiffs timely appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003) and 12–2101(B) (2003).

## ANALYSIS

¶ 10 Plaintiffs contend the court erred in granting Jiffy Lube's motion for summary judgment. In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 496, ¶ 2, 88 P.3d 565, 566 (App.2004). We determine de novo whether any genuine issues of material fact exist and whether the trial court correctly applied the law. *Green v. Garriott*, 221 Ariz. 404, 417, ¶ 51, 212 P.3d 96, 109 (App.2009); *Mein v. Cook*, 219 Ariz. 96, 98, ¶ 9, 193 P.3d 790, 792 (App.2008).

¶ 11 The primary issue on appeal is whether Jiffy Lube owed a legal duty to Plaintiffs in regard to the allegedly worn tires.[1] We conclude, with guidance from the Arizona Supreme Court's opinion in *Gipson v. Kasey*, 214 Ariz. 141, 150 P.3d 228 (2007), that Jiffy Lube did not owe Plaintiffs a legal duty that would permit a recovery in this case.

¶ 12 "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson*, 214 Ariz. at 143, ¶ 9, 150 P.3d at 230. Duty is an "obligation, recognized by law, requiring the [defendant] to conform to a certain standard of conduct, for the protec-

tion of others against unreasonable risks." *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (quoting W. Proffer, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971)). The existence of a duty is a question of law that we review de novo. *Ritchie v. Krasner*, 221 Ariz. 288, 295, ¶ 11, 211 P.3d 1272, 1279 (App.2009). The other elements of negligence are usually factual issues to be decided by a jury. *Id.* Whether a defendant owes the plaintiff a duty is a threshold issue. *Gipson*, 214 Ariz. at 143, ¶ 11, 150 P.3d at 230. Absent a duty, a negligence action cannot be maintained. *Id.*

¶ 13 Plaintiffs contend that Jiffy Lube owed Plaintiffs a duty to inspect the Volvo's tires because the oil change contract required Jiffy Lube to check each tire's air pressure. Plaintiffs also contend that, aside from the contract, a duty arose because the standard in the industry called for vehicle maintenance businesses like Jiffy Lube "to inspect all visible vehicle components for hazards during the performance of their service work." Finally, Plaintiffs argue public policy is better served by imposing such a legal duty on Jiffy Lube. We analyze Plaintiffs' arguments using the principles provided by our supreme court in *Gipson* regarding the determination of duty.

¶ 14 The issue presented in *Gipson* was whether persons who are prescribed drugs owe a duty of care when they improperly give their drugs to others. 214 Ariz. at 142, ¶ 1, 150 P.3d at 229. In analyzing this issue, the Arizona Supreme Court considered two factors in evaluating the existence of a duty: (1) the relationship between the parties and (2) public policy considerations. *Id.* at 144–146, ¶¶ 18–26, 150 P.3d at 231–233. The court explained that "[d]uties of care may arise from special relationships based on con-

---

1. According to Plaintiffs, the trial court did not articulate its reasons for granting Jiffy Lube's motion for summary judgment. Plaintiffs therefore raise two arguments: the court erred in granting summary judgment because it made factual determinations that should have been made by a jury; and the court erred in concluding that Jiffy Lube did not owe a legal duty to Plaintiffs to inspect the tires. We disagree that the court's rationale for granting summary judgment was unclear. The court's comments in conjunction with initially denying the motion and the parties' subsequent agreement to submit the summary judgment motion for reconsideration indicate that the court ultimately granted summary judgment because it had concluded that Jiffy Lube did not owe a legal duty to Plaintiffs. Furthermore, nothing in the trial court's rulings suggests the court had decided factual issues in reaching its decision to grant summary judgment.

tract, family relations, or conduct undertaken by the defendant." *Id.* at 145, ¶ 18, 150 P.3d at 232. In addition, the common law provides various categorical relationships that can give rise to a duty, such as the landowner-invitee relationship, the tavern owner-patron relationship, and relationships that create a duty to control the actions of another. *Id.* at ¶ 19. The court cautioned, however, against determinations of duty based on a "fact-specific analysis" of the relationship between the parties, emphasizing that the issue of duty is a legal matter rather than a factual matter. *Id.* at ¶ 21. Public policy, the other factor used to determine the existence of a duty, may be found in state statutory laws and the common law. *See id.* at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4. With these precepts in view, we examine the relationship between the parties and any applicable public policy.

### The Relationship Between The Parties

■ ¶ 15 In this case, the relationship between the parties did not create a duty on the part of Jiffy Lube to inspect the tires. First, the categories of relationships discussed in *Gipson* do not encompass the relationship Jiffy Lube had with Plaintiffs. In addition, we disagree with Plaintiffs that their contractual relationship with Jiffy Lube extended to a safety inspection of the Volvo's tires such that Jiffy Lube owed a duty of reasonable care to inspect the tires. The oil change agreement between Jiffy Lube and Plaintiffs included only a check of the air pressure in the Volvo's tires, not an overall tire inspection.

¶ 16 Our supreme court has recently emphasized, in different contexts, the importance of the contracts between parties in determining the boundaries of potential liability. *See Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 321, ¶ 1, 223 P.3d 664, 665 (2010) (applying the economic loss doctrine in a construction defect case to limit the property owner to its contractual remedies); *1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, 201, ¶ 1, 196

P.3d 222, 223 (2008) (upholding a liability-limitation clause in the contract between the parties). Similarly, the scope of Jiffy Lube's contractual undertaking significantly influences the determination of whether a duty existed to inspect the tires. On this record, Jiffy Lube did not undertake to inspect the degree and pattern of tire wear.

¶ 17 Plaintiffs further argue that because performance of the oil change contract required Jiffy Lube technicians to work underneath the Volvo with the ability to see portions of the rear tires, and because the contract included a check of each tire's air pressure, the contract impliedly contained an undertaking by Jiffy Lube to inspect the condition of the Volvo's tires. We do not agree. Such an expansion of Jiffy Lube's duty beyond the contractually agreed upon services is not warranted.

¶ 18 Plaintiffs also point to the opinion of this court in *Reader v. Gen. Motors Corp.*, 13 Ariz.App. 207, 475 P.2d 497 (1970), *vacated on other grounds*, 107 Ariz. 149, 483 P.2d 1388 (1971), to support their argument that Jiffy Lube's duty to inspect the Volvo's tires arose from the contractual relationship between the parties. This court held in *Reader* that, if "a *dealer* performs *manufacturer's warranty repairs* and in close proximity to the situs of the repairs there is a dangerous condition which the mechanic saw or in the exercise of ordinary care should have seen, there is either a duty to repair or a duty to warn." 13 Ariz.App. at 214, 475 P.2d at 504 (emphasis added.). In considering Plaintiffs' reliance on *Reader*, we initially emphasize that this court's opinion in *Reader* was vacated by the Arizona Supreme Court. The portion of *Reader* relied upon by Plaintiffs in support of their duty argument has not been endorsed by our supreme court and appears inconsistent with our supreme court's emphasis in *Gipson* that determinations of duty should not depend on fact-specific analyses of the details of conduct of the parties. *See Gipson*, 214 Ariz. at 145, ¶ 21, 150 P.3d at 232.[2]

---

2. Even if we assume that the portion of this court's opinion in *Reader* relied upon by Plaintiffs remains good law, the *Reader* holding does not apply to the instant case because Jiffy Lube is

not a dealer and the maintenance Jiffy Lube agreed to perform on Plaintiffs' Volvo was not covered under a manufacturer's warranty. Additionally, *Reader* taken as a whole works against

¶ 19 Based upon principles from *Gipson* and for the reasons explained above, we conclude that the relationship between Jiffy Lube and Plaintiffs did not create a duty of care beyond Jiffy Lube's actual undertaking.

## Public Policy

¶ 20 Plaintiffs also assert that public policy warrants a conclusion that Jiffy Lube owed Plaintiffs a duty of care to perform a safety inspection of the tires. As previously noted, our supreme court in *Gipson* held that public policy may support the recognition of a duty of care. 214 Ariz. at 145, ¶ 23, 150 P.3d at 232. Public policy may be found in state statutory laws and the common law. *See id.* at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4.

¶ 21 In *Gipson*, the court found that the defendant owed a duty of care based on Arizona's statutes prohibiting the distribution of prescription drugs to persons not covered by the prescription. *Id.* at 147, ¶ 32, 150 P.3d at 234. Because the *Gipson* court found a duty based on Arizona statutes, it did not decide if a duty would exist independently as a matter of common law. *Id.* at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4. The court did recognize, however, as stated in *Ontiveros*, that "every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." *Id.* (quoting *Ontiveros*, 136 Ariz. at 509, 667 P.2d at 209). The court also cited the proposed Restatement (Third) of Torts ("Restatement") § 7, which provides that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." *Gipson*, 214 Ariz. at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional

Harm § 7 (Proposed Final Draft No.1, 2005)). Because we do not perceive that Jiffy Lube's actions *created the risk* resulting from the allegedly worn tires, we conclude that neither the principle from *Ontiveros* nor the proposed Restatement supports the existence of a duty on the part of Jiffy Lube to inspect the tires for safety.

¶ 22 The supreme court in *Gipson* did not adopt the proposed Restatement nor do we purport to do so. But we derive guidance from the proposed Restatement regarding the importance of the scope of the undertaking by the defendant and the distinction between creating a risk and failing to discover a risk.

¶ 23 In contrast to § 7 of the proposed Restatement, § 37 addresses the question of duty when the actor's conduct *did not create the risk* of physical harm to the plaintiff. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 37 (Proposed Final Draft No.1, 2005). Section 37 provides that "[a]n actor whose conduct has not created a risk of physical harm to another has no duty of care to the other unless a court determines that one of the affirmative duties in §§ 38–44 is applicable." *Id.* Illustration 1 in comment c to § 37 provides an example of these principles:

> Pleasant Valley Insurance Company provides workers' compensation insurance to Green Acres Rest Home. Pleasant Valley periodically inspects Green Acres to identify risks to Green Acres' employees. During an inspection, Pleasant Valley's employee neglects to inspect Green Acres' heating system and, therefore, fails to identify a faulty valve that emitted carbon monoxide. Later, Colleen, a Green Acres' employee, is overcome by leaking carbon

Plaintiffs' argument that their contractual relationship with Jiffy Lube created a duty requiring Jiffy Lube to inspect the tread on Plaintiffs' tires. *Reader* stated that the principles set forth in *Glisson v. Colonial Buick Inc.*, 156 So.2d 271 (La.Ct.App.1963) and the Restatement (Second) of Torts § 403 (1965) were not inconsistent with its holding. 13 Ariz.App. at 213–14, 475 P.2d at 503–04. In *Glisson*, the Louisiana Court of Appeals agreed with the trial court's observation that "[w]hen a mechanic contracts to repair a defect in an automobile he does not impliedly contract to inspect and repair the neighboring

parts." 156 So.2d at 274. Similarly, the Restatement (Second) of Torts § 403 notes that a "contractor who fails to exercise reasonable care to inform his employer of a dangerous condition, which he is not employed to repair, but which he discovers in the course of making the repairs agreed upon . . . may not be subject to the liability stated in this section." These principles, gleaned from authorities cited in *Reader*, support the conclusion that Jiffy Lube did not owe Plaintiffs a legal duty to inspect the tires because Jiffy Lube did not undertake to do so.

monoxide. *Because Pleasant Valley's conduct did not create a risk of harm to Colleen, whether Pleasant Valley has a duty of care to Colleen is governed by the provisions of this Chapter, not § 7. See § 42.*

(Emphasis added.) Similarly, Jiffy Lube did not create the risk inherent in excessive or uneven tread wear, and under this Illustration, we are directed to § 42 which recognizes a duty based on an undertaking by one party to render services to another. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 42 (Proposed Final Draft No.1, 2005). Because Jiffy Lube did not undertake, either contractually or voluntarily, to inspect and warn Plaintiffs regarding the safety of the tires, no such duty is imposed on Jiffy Lube.

¶ 24 Illustration 4 in comment g to § 42 of the Restatement underscores that courts should usually limit the existence of a duty to the scope of the actual undertaking:

> Lindsay hires Margaret to fix a leaking plumbing fixture in a second-floor apartment. Margaret repairs the leak in a nonnegligent manner. After completing the repairs, Margaret realizes that water that had leaked earlier from the fixture continued to leak from the apartment onto an adjacent alley. When returning home that evening, Lindsay slips and falls on ice that had formed in the alley from the water that continued to leak. Lindsay sues Margaret claiming that she had a duty of reasonable care with regard to the water that leaked out of the fixture. *The risks posed by the water that had previously escaped from the fixture are beyond the scope of Margaret's undertaking to repair the fixture as a matter of law, and Margaret is not subject to liability for Lindsay's harm.*

(Emphasis added.)

¶ 25 Applying *Gipson* and these principles to the instant case, we conclude that public policy does not support the imposition of a duty on the part of Jiffy Lube. Unlike *Gipson*, Plaintiffs neither cite nor suggest a statute that might create a duty. In addition, the common law does not create a duty. Jiffy Lube, even under Plaintiffs' view of the

facts, did not create the allegedly dangerous tire tread that ultimately contributed to Bryant's injuries and there is no duty based upon Jiffy Lube's limited undertaking. Similar to the illustration found in § 42 of the proposed Restatement, *supra* ¶ 24, the risk posed by the Volvo's worn tires was beyond the scope of Jiffy Lube's undertaking, which involved merely checking each tire's air pressure, adjusting the pressure as necessary, and performing other non-tire-related services.

### The Alleged Industry Standard

¶ 26 Finally, we address Plaintiffs' argument that a duty arose in this case "because the standard in the industry called for service [and] maintenance businesses like Jiffy Lube to inspect all visible vehicle components for hazards during the performance of their service work." The existence of a duty is a threshold legal question that must be determined by the court. Standard industry practice addresses primarily whether there has been a breach of duty. *See Gipson*, 214 Ariz. at 143, ¶ 10, 150 P.3d at 230 ("The existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case."). If Jiffy Lube did not owe Plaintiffs a duty to inspect the tires for dangerous wear, the standard of care and the potential breach thereof are irrelevant. *See id.* at ¶ 11 ("Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained.").

¶ 27 As already noted, neither the contract nor Jiffy Lube's actual undertaking included a safety inspection of the tires. Checking the air pressure and adjusting the inflation to a recommended pressure range is distinct from inspecting the tread and evaluating the safety of the tires. The undisputed facts of the limited undertaking, rather than an alleged industry standard, must form the foundation for determining whether a duty exists. *See Hafner v. Beck*, 185 Ariz. 389, 393, 916 P.2d 1105, 1109 (App.1995) (rejecting argument that duty should be based on professional standards described by plaintiff's expert instead of legal requirements); *L.A. Fitness Int'l., LLC v. Mayer*, 980 So.2d 550,

558 (Fla.Dist.Ct.App.2008) (rejecting expert testimony of industry standards and explaining that "[a]lthough the custom and practice of an industry can help define a standard of care a party must exercise after it has undertaken a duty, industry standards do not give rise to an independent legal duty") (citations omitted); *de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1311 (2d Cir.2002) ("Courts therefore have sensibly declined to infer legal duties from ... industry norms that advocate greater vigilance than otherwise required by law."); *Van Duyn v. Cook-Teague P'ship*, 694 N.E.2d 779, 782 (Ind.Ct. App.1998) ("The alleged custom and practice of Cook–Teague may not be used to establish a duty in the first place."); *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 307 (Minn.1996) ("[T]he evidence of industry custom would be relevant as to a standard of care, but did not establish a duty ..."); *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 334 (5th Cir. 1993) ("Nonetheless, although custom may be considered as evidence bearing on the question of negligence once a duty is found to exist, custom itself does not create the duty. Custom may help define the standard of care a party must exercise after it has undertaken a duty, but custom alone cannot create a legal relationship between the parties.").

## CONCLUSION

¶ 28 Jiffy Lube did not create the risk resulting from allegedly worn tires and did not undertake to inspect the tires of Plaintiffs' Volvo. We decline to extend Jiffy Lube's duty to include a safety inspection of the tires.

¶ 29 Accordingly, we affirm the summary judgment entered by the trial court in favor of Jiffy Lube.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and PHILIP HALL, Judge.