411 P.2d 194

O'RIELLY MOTOR COMPANY, Appellant,

v.

Samuel A. RICH, Appellee.*

No. 2 CA–CIV 69.

Court of Appeals of Arizona.

Feb. 18, 1966.

Rehearing Denied March 30, 1966.

Review Denied April 19, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's

No. 8030. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

Spaid, Fish, Briney & Duffield, by Richard C. Briney, Tucson, for appellant.

Miller & Pitt, by Robert F. Miller, Tucson, for appellee.

HATHAWAY, Judge.

O'Rielly Motor Co., defendant below, appeals from a judgment entered in superior court, Pima county, in favor of Samuel A. Rich, plaintiff below, awarding damages for personal injuries sustained by him.

On January 6, 1962, a Saturday, the plaintiff, accompanied by his wife and four children, was inspecting Chevrolet station wagons displayed by O'Rielly Motor Company at its various sales locations with a view to purchasing one. In the early afternoon, after two prior stops, the entire Rich group drove to the defendant's new car make-ready lot at Euclid and 17th Street, Tucson, in a demonstrator driven by defendant's salesman Burns. This lot, which ordinarily closed between noon and 1 p. m. on Saturdays, was enclosed by a chain-link fence approximately eight feet high. Three strands of barbed wire were strung along the top of the fence. The only means of access to the lot was through a gate in the fence which was secured by a padlock when the lot was closed. Keys to the padlock were available but salesman Burns did not have one in his possession.

Plaintiff and family, together with Burns, drove through the open gate to the rear of the lot, alighted from the car and proceeded to inspect several vehicles. Shortly thereafter the salesman observed a car pulling away from outside the gate, about 150 feet distant. Realizing the gate was locked, Burns ran toward the car calling to the car's occupants as he ran, in an attempt to "flag it down." At the time plaintiff's group had entered the lot, several unidentified men were present on the premises. Whether or not they were defendant's employees was not established at the trial.

Although the parties' versions differ as to details, it is apparent from the record that one successful attempt had been made to summon help. A passing motorist's attention was attracted and his aid enlisted to phone the sales manager to unlock the gate. Whether or not the sales manager was successfully contacted at this time is unknown, but no one came to unlock the gate. Plaintiff and his wife testified to the fact that the children were becoming restless, there were no toilet facilities available, and that after remaining within the enclosure for at least 1½ hours they began to panic at the prospect of their predicament remaining undiscovered until Monday morning. Plaintiff therefore decided to attempt to scale the fence with a view to procuring help. This required climbing to the top and jumping forward in order to clear the barbed wire which projected outward from the top of the fence. He negotiated the top and jumped, landing on the ground in such a fashion that his left leg and right heel were injured. Shortly thereafter help was summoned by a passing motorist, plaintiff was taken to the hospital, and the gate was unlocked.

The case was tried to a jury on the issues of defendant's negligence and plaintiff's contributory negligence and assumption of risk. It was stipulated between the parties that plaintiff was a business invitee on the defendant's premises. The jury resolved the issues in plaintiff's favor and returned a verdict for him fixing the amount of damages at $8,758. On appeal, the defendant's assignments of error are directed to the trial court's exclusion of evidence, instructions to the jury, and the use by plaintiff's counsel of a prepared chart labelled "How to Figure Damages."

### Exclusion of Evidence

The defendant contends that the trial court erroneously refused to admit into evidence certain photographs offered by defendant. These photographs depicted the make-ready lot and the area surrounding it. However, the chain-link fence which enclosed the lot at the time of the incident in question was missing from the photographs.

The lower court excluded the exhibits since the picture of the lot did not represent its condition at the time of the incident. A ruling on such matters is left within the discretion of the trial court. Henderson v. Breesman, 77 Ariz. 256, 262, 269 P.2d 1059 (1954); Udall, Arizona Law of Evidence § 132. We do not think the court abused its discretion.

### Instructions

Defendant's assignments of error pertaining to the jury instructions concern both the giving of certain instructions and the refusal to give others. The trial court gave the following instruction on assumption of risk requested by defendant:

"A person is said to assume a risk when he freely, voluntarily and knowingly manifests his assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger.

"A person who thus assumed a risk may not be entitled to recover for damages caused by him without intention which resulted from the dangerous condition or conduct to which he thus exposes himself.

"If assumption of risk is to bar recovery, then it must be voluntary. To be voluntary, these two factors must be present: First, the person in question must have actual knowledge of the danger. Second, he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question."

The trial court gave the following additional instruction, over defendant's objection, on the application of the assumption of risk doctrine:

"* * * before the doctrine of assumption of risk can apply in this case, there must have been another reasonably convenient course of action open to the plaintiff. If you find from the evidence that the plaintiff did what was reasonable under the circumstances, and that there was no alternative or reasonably convenient course of action, then I instruct you that the principle of assumption of risk does not apply in this case."

Defendant takes the position that the instructions are irreconcilable and their conflict misled the jury, thereby constituting reversible error. We cannot agree with this argument. The latter instruction is an enlargement of the last paragraph of the first instruction, i. e., there must be circumstances that provide a reasonable opportunity to safely refuse to expose himself to the danger in order for the choice to be freely made. Restatement, Second, Torts § 496E (2) states:

"The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to (a) avert harm to himself or another, or (b) exercise or protect a right or privilege of which the defendant has no right to deprive him."

In order for the acceptance of the risk to be deemed voluntary, a defendant by his tortious conduct cannot force upon a plaintiff a choice of courses which does not offer a reasonable alternative to encountering the risk. Plaintiff Rich was faced with two courses of action: he and his family could remain where they were and hope that they would be discovered or he could take his chances of safely climbing over the fence to get help. The locked gate prevented the plaintiff and his family from leaving the premises. Plaintiff testified as to his mounting concern for his family who were faced with the prospect of being detained for a protracted period

of time. Under such circumstances, reasonable minds might differ as to whether remaining in the enclosure constituted a reasonable alternative course of conduct.

We note that the instruction as given stated " * * * and that there was no alternative or reasonably *convenient* course of action * * *." (Emphasis added.) This instruction was given by the lower court on the authority of Miller v. George F. Cook Construction Co., 91 Ariz. 80, 370 P.2d 53 (1962), wherein our Supreme Court stated:.

> " * * * and whether there was a reasonably convenient route, other than the one taken, are all questions of fact to be determined by the jury under a proper instruction." 91 Ariz. at 83, 370 P.2d at 55.

The Miller case held that an assumption of risk instruction was proper since the facts indicated "there was another reasonably convenient route open to the plaintiff."

Webster's Third New International Dictionary defines *convenient* as (1) "suited to personal ease or comfort," (2) "suited to the needs or circumstances of a particular situation," or (3) "near at hand: easily accessible: handy." We believe that the construction of the word "convenient" as intended by our Supreme Court in the Miller case, supra, was the second definition, i. e., "suited to the needs or circumstances of a particular situation." One of the factors to be considered in determining the existence of a reasonable and adequate alternative course of action is the difficulty or inconvenience of one course of conduct as compared with the other. See Restatement, Second, Torts § 496(E), comment (d).

Defense counsel objected to the giving of the above instruction on the ground that it was an incorrect statement of the law and inapplicable to the facts of the case. The trial judge was not apprised of the possibility that the jury might interpret the word "convenient" to mean "suited to personal ease or comfort," and we cannot say that the jury construed the word to mean. anything more than "suited to the needs

or circumstances of the particular situation." We find no reversible error in the instruction as given, but are not presuming to pass upon whether the assumption of risk doctrine is applicable. See The City of Tucson v. Holliday, Ariz.App., 411 P. 2d 183, filed February 17, 1966.

██ Defendant contends that notwithstanding it could be legally charged with negligence, such negligence could not be the proximate cause of plaintiff's injuries for the reason that plaintiff's act in jumping was an intervening act that broke the chain of causation and relieved the defendant of liability. Whether there is a break in causation because of an intervening act which will relieve a defendant from liability depends upon whether the intervening act is one that should have been reasonably anticipated by the defendant. MacNeil v. Perkins, 84 Ariz. 74, 83, 324 P.2d 211 (1958); Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 13, 63 P.2d 639 (1937); City of Phoenix v. Schroeder, 1 Ariz.App. 510, 405 P.2d 301, 307 (1965). As we have previously indicated in Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120, 129 (1965), foreseeability appears to be the gist of the test adopted by our Supreme Court as to whether subsequent negligent conduct is a superseding cause of injury so as to relieve the defendant of liability.

The concept of foreseeability was touched upon in the instruction on proximate cause and the following:

> "You are also instructed that if an act of negligence, if such you find, does nothing more than furnish the condition by which an injury is made possible and if such condition causes injury by the subsequent independent conduct of another person, the two acts are not concurrent and the existence of the condition is not a proximate cause of the injury.

> "You are instructed that in determining whether or not the defendant, O'Rielly Motor Company's conduct was a proximate cause of the injury to the plaintiff, I instruct you that the law

does not require precision in foreseeing the exact hazard or consequences which happened. It is sufficient if what occurred was one of the kind of consequences *which might reasonably have been foreseen.*" (Emphasis supplied.)

Defendant's requested instructions on intervening cause would have elaborated upon the concept, but both instructions were faulty in part. One instruction contained the following:

"When a complaining party had some means of escape from an alleged impending danger that he could have availed himself of, or when the means of avoiding it were open to his choice, the negligence of the defendant, if any, will not generally be regarded as the proximate cause of the injury in the absence of facts or circumstances showing the connection between the two."

·This instruction seems to be related to the assumption of risk doctrine but does not properly state this defense. The other refused instruction stated:

"You are instructed that where a plaintiff's own independent and unnecessary act, if such you find, causes the injury, such act, although not wrongful, will be regarded as the proximate cause and defendant's negligence, if such you find, will be regarded as the remote cause of the injury. Under such circumstances, the proximate is the sole responsible cause and the law disregards the remote one."

Whether a plaintiff's act is "independent" and "unnecessary" is not the test of liability particularly in the absence of any definition of these terms.

■ The trial court was not required to reword the requested instructions so as to eliminate improper portions and the refusal to give partially correct instructions was not erroneous. Powell v. Langford, 58 Ariz. 281, 288, 119 P.2d 230 (1941). We hold, therefore, that in the absence of a request for proper instructions the concept of intervening cause was adequately covered in the instructions given.

■ The defendant complains of an instruction that defendant's duty to keep its premises in a reasonably safe condition for customers included the obligation to provide and maintain a suitable exit from the premises. An invitation to enter premises carries with it the duty to invitees to provide reasonably safe means of ingress and egress. 65 C.J.S. Negligence § 48b; Prosser, Law of Torts, 2d ed., § 78, p. 458. Therefore the jury was correctly instructed as to defendant's duty to plaintiff Rich.

■ Also assigned as error is an instruction to the effect that a customer who finds himself locked in when a normal exit is not available may take reasonable steps to extricate himself; that a property owner may be liable in damages to a person for injuries incurred in attempting to leave the premises if the injury is caused by the property owner's failure to provide a reasonable exit.

The record discloses that the uniqueness of the situation created problems for the trial judge in adapting the usual "duty owed to invitee" instruction to the facts involved in the present case. If the defendant breached his duty to provide a safe exit from the car lot, thereby preventing the plaintiff from departing therefrom, a foreseeable consequence of the defendant's conduct was that the plaintiff would take steps to remove the impediment. Therefore, injury incurred by the plaintiff as the result of reasonable efforts to extricate himself from a situation created by defendant's negligence may render the defendant liable.[1] Whether the means adopt-

---

1. See Restatement, Second, Torts § 446 which states:
"If the actor intentionally or negligently impedes the exercise of another's rights ɤr privileges, the other's normal efforts to remove the impediment or to exercise the right or privilege notwithstanding its existence are not a superseding cause of harm resulting from such efforts."

-ed by the plaintiff were unreasonable is a question of contributory negligence. See Restatement, Second, Torts § 446, comment (a). We are of the opinion, therefore, that the jury was properly instructed as to the principles of law to be applied to the facts since the issues of contributory negligence and assumption of risk were also submitted to them.

We find no merit in defendant's other assignments of error concerning the trial court's refusal to give defendant's requested instructions concerning (1) a landowner's liability and (2) a landowner's use of his land. Although correct statements of law in the abstract, they were not applicable to the facts in the case at bar.

### Use of Chart

During his opening summation to the jury, plaintiff's counsel displayed a prepared chart entitled "How to Figure Damages." The chart listed various items of damages, including damages for pain and suffering with suggested dollars-per-year awards. Defense counsel objected to the use of the prepared chart and his objection was overruled. The chart remained within the jury's view throughout closing arguments and the trial court's charge to the jury. Defense counsel did not renew his objection to the chart nor request that it be removed while instructions were being given. The trial court, however, gave a cautionary instruction that statements of counsel were not evidence and further instructed the jury that the case be decided solely upon the evidence and the inferences therefrom.

The propriety of the "mathematical" argument such as was made by plaintiff's counsel has been the subject of much discussion as to which view represents the weight of authority in this country. See Anno., 60 A.L.R.2d 1347. The decision of the Supreme Court of New Jersey in Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331 (1958), has precipitated much of the discussion. The Botta rule

prohibited argument of this character as an "unwarranted intrusion into the domain of the jury." A wide divergence of views has been expressed by the numerous state and federal courts which have considered the subject, some accepting the Botta rule while others have rejected it.

Appellate counsel have most ably presented both views and urge this court to choose between the two and adopt for this jurisdiction a rule that will govern subsequent trials. No contention is made on this appeal that the verdict was excessive and therefore we deem it unnecessary to enunciate a procedural blueprint for future trials. The trial judge has great discretion in the conduct and control of the trial proceedings, Higgins v. Arizona Savings and Loan Ass'n, 90 Ariz. 55, 69, 365 P.2d 476 (1961), and the responsibility for confining the conduct of counsel within the limits of legitimate advocacy is primarily his. Olympic Land Co. v. Smithart, 1 Ariz.App. 175, 400 P.2d 846, 850 (1965).

We will not interfere in matters within his discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial. In view of the fact that a cautionary instruction was given to the jury and there being no claim of excessiveness of the verdict, we can find no error in the trial judge's allowing plaintiff's counsel to use the subject chart in his argument to the jury. We do not profess to pass on the propriety of the chart remaining on exhibition during the instruction-giving period. Defense counsel neither requested its removal nor called to the trial court's attention his objection to its presence.

We find nothing in the record of this case upon which to disturb the judgment entered in the court below.

Judgment affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.