924 P.2d 117

**Daymon STEPHENS and Edda Stephens, husband and wife, Plaintiffs–Appellants,**

**v.**

**BASHAS' INC., an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 95–0190.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 12, 1996.

Jennings, Strouss & Salmon, P.L.C. by James M. Ackerman, Phoenix, and Robert T. Neville, P.C. by Robert T. Neville, Tempe, for Appellants.

Burch & Cracchiolo, P.A. by Daryl D. Manhart, Ian Neale, Linda A. Finnegan, Phoenix, for Appellee.

## OPINION

PATTERSON, Judge.

This appeal concerns whether a business had any duty to a truck driver delivering goods to that business whose injury occurred while he was standing in the adjacent street preparing to unload. We reverse the summary judgment order entered by the trial court on the Appellee's behalf.

## I. FACTS AND PROCEDURAL HISTORY

The facts viewed in the light most favorable to the party opposing the motion for summary judgment, *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191, 888 P.2d 1375, 1378 (App.1994), are as follows:

Appellant Daymon Stephens (Stephens) was hired to drive a load of grocery products from Salt Lake City to Appellee Bashas' (Bashas) warehouse on 35th Avenue south of Buckeye Road in Phoenix. His set delivery time was 4:00 a.m. on October 19, 1992.[1] Stephens arrived in Phoenix on October 18, parked at a Circle K truck stop one quarter mile from the warehouse, and slept there. He then drove to the warehouse at approximately 3:30 a.m. the following morning.

When Stephens began turning onto the Bashas' premises, Bashas' security guard James Watz stopped him. Watz told Stephens he would have to park somewhere off Bashas' property. Stephens noticed "no parking" signs, however, on 35th Avenue. He drove down an adjacent street, Papago, to locate a place to park, but "no parking" signs were posted there as well.

---

1. Some dispute apparently exists over the actual date of the accident. The complaint alleges that it occurred on October 29. Bashas' briefs refer to October 1 and Stephens' briefs refer to October 19. The trial court made no finding of fact on this point. Because we view the facts in the light most favorable to the appellant, we adopt Stephens' date for purposes of this appeal.

Finding no place to park near the warehouse, Stephens turned his truck around and parked on 35th Avenue. He then went to talk to Watz, who told Stephens he needed to obtain a loading door assignment. A "lumper"[2] named Paul Miller approached Stephens, saying he could get the assignment for him.

While Miller was getting the dock assignment, Stephens moved the truck, parked in the center two-way left turn lane on 35th Avenue and waited for Miller to return. Two other trucks pulled up and parked behind him in the center lane.

Evidence indicated that truck drivers waiting to make deliveries at the Bashas' warehouse routinely parked in that center lane. Bashas had instructed Watz to tell truckers they could not park in the center lane before the gates opened at 4:00 a.m. Watz did not receive any instructions, however, regarding parking in the center lane after that time.

According to Watz, truckers parked in the center lane so they could open the back doors of their trucks before backing onto the warehouse property. He did not know where else truckers could park to open their doors and then back up to the loading docks. Miller reported that truck drivers did not open their doors on Papago Street because of the risk of theft.

While parked in the center lane waiting for dock clearance, Stephens saw that his truck would block traffic on 35th Avenue if he partially backed onto Bashas' property before opening his back doors. Wood pallets and Bashas' trucks and equipment were on the premises, and the amount of room between the dock and street was minimal. Thus, once Stephens saw a truck exit from his assigned dock, he got out of his cab, walked to the back of the truck and opened its doors. As Stephens returned to his cab and was about to get in, a pickup truck driven by Salvador Chavez strayed into the center lane, hit and seriously injured him.

Stephens sued Chavez, Bashas and the City of Phoenix. He failed to serve Chavez,

however, and the trial court dismissed his complaint against the City on statute of limitations grounds. In his complaint against Bashas, Stephens alleged in part that Bashas negligently caused his injuries by failing to:

1) provide incoming truckers with a reasonably safe place to await unloading;

2) remove obstructions to incoming trucks in and around its dock area;

3) provide adequate lighting and other protection to truckers waiting to unload;

4) provide for a system of dock unloading that would eliminate the truckers' need to leave their vehicles or cross the highway;

5) provide a "holding" or "waiting" area for incoming truckers off the highway; and

6) warn of the unreasonable dangers presented by its facilities.

Bashas moved for summary judgment, asserting that it neither owed a duty to provide Stephens with an on or off-site waiting area, nor a duty to provide radio communication between Stephens and its receiving office. Finally, Bashas argued that Stephens' injuries were caused solely by the combined negligence of Chavez's driving and Stephens' leaving his cab unnecessarily parked in the center lane.

In his response and cross-motion for partial summary judgment, Stephens argued that Bashas had a duty to him as a business invitee. This fact included a duty, he alleged, to provide a reasonably safe means of ingress and egress to Bashas' property. He also asserted that Bashas' breach and causation were questions of fact for the jury.

The trial court granted Bashas' motion. It reasoned that Bashas "had no duty towards the plaintiff with respect to controlling either the plaintiff's conduct in parking on a public street or protecting him from an apparent risk when he chose to walk in traffic." Stephens timely appeals from this judgment.

## II. DISCUSSION

### A. Duty

█ We must first determine whether Bashas owed a duty of care to Stephens. *Rog-*

---

2. "Lumpers" are individuals who wait near loading docks and offer to help truck drivers unload their freight for pay.

ers by and through Standley v. Retrum, 170 Ariz. 399, 400, 825 P.2d 20, 21 (App.1991). The issue of duty is generally decided by the trial court as a matter of law. *Rudolph v. Arizona B.A.S.S. Fed'n*, 182 Ariz. 622, 624, 898 P.2d 1000, 1002 (App.1995). The relationship between these parties determines whether Bashas was obligated to use some care to avoid or prevent injury to Stephens. *See Lasley v. Shrake's Country Club Pharmacy, Inc.*, 179 Ariz. 583, 585, 880 P.2d 1129, 1131 (App.1994).

■■ Under these circumstances, Stephens was Bashas' invitee. A business visitor or invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 143, 639 P.2d 330, 333 (1982), *quoting* Restatement (Second) of Torts § 332 (1965); *Callender v. MCO Properties*, 180 Ariz. 435, 442, 885 P.2d 123, 130 (App.1994). A person making a delivery to a business is a business invitee. *See Busy Bee Buffet v. Ferrell*, 82 Ariz. 192, 196, 310 P.2d 817, 819–20 (1957).

We disagree with Bashas' assertion that Stephens was not an invitee because he could not have obtained that status until arriving on Bashas' property. Stephens was "invited to enter" Bashas' warehouse premises. *Nicoletti*, 131 Ariz. at 143, 639 P.2d at 333. He had been issued a delivery time and had briefly entered the premises when he initially parked his truck and spoke with Watz. No one disputes that at the time Stephens was injured, Bashas knew who he was, expected an imminent delivery from him, and was aware of his presence on adjacent property.

■■ In Arizona, a business owner has a duty to maintain its premises in a reasonably safe condition for invitees. *McDonald v. Smitty's Super Valu, Inc.*, 157 Ariz. 316, 318, 757 P.2d 120, 122 (App.1988). This duty includes an obligation "to provide reasonably safe means of ingress and egress." *O'Rielly Motor Co. v. Rich*, 3 Ariz.App. 21, 26, 411 P.2d 194, 199 (1966). *See also Nicoletti*, 131 Ariz. at 143, 639 P.2d at 333; *Cooley v. Makse*, 46 Ill.App.2d 25, 196 N.E.2d 396, 398 (1964).

■■ We also disagree with Bashas' contention that it owed no duty to Stephens because it owes no duty to members of the traveling public on abutting streets. *See Coburn v. City of Tucson*, 143 Ariz. 50, 52–53, 691 P.2d 1078, 1080–81 (1984). First, Stephens was not merely a member of the traveling public in relation to Bashas. He was a business invitee to whom Bashas owed a duty of care. Furthermore, several courts have concluded that a business' duty to invitees may extend beyond its own property. In *Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 772 (Ind.App.1986), the court stated that such a duty arises when:

> it is reasonable for invitees to believe the invitor controls premises adjacent to his own or where the invitor knows his invitees customarily use such adjacent premises in connection with the invitation.

The court in *Ollar v. Spakes*, 269 Ark. 488, 601 S.W.2d 868, 870–71 (1980), found a similar duty. No one disputes that Bashas knew truck drivers used the center lane of 35th Avenue for parking and opening their doors before backing onto its property.

This court has also examined a landlord's duty to his tenants where a tenant's child was injured off-premises due to lack of fencing on the premises. *Udy v. Calvary Corp.*, 162 Ariz. 7, 780 P.2d 1055 (App.1989). In *Udy*, we stated:

> Harm that is caused, in whole or in part, by an activity or condition on particular premises cannot be viewed as unforeseeable as a matter of law merely because it happens to manifest itself beyond the property line.

162 Ariz. at 11, 780 P.2d at 1059. In concluding that the landlord had a duty of care to the tenant, we explained that the occurrence of the injury off-premises was only potentially relevant to the determination of whether the landlord acted reasonably. We found that it did not compel the conclusion, however, that the landlord owed the tenant no duty of care. 162 Ariz. at 12, 780 P.2d at 1060.

We hold likewise here. The occurrence of Stephens' injury beyond Bashas' warehouse premises may be relevant to whether Bashas acted reasonably under the circumstances.

It does not mean, however, that Bashas owed Stephens no duty of care.

The case law cited by Bashas to the contrary[3] is inapposite for two reasons. First, most of those cases confuse the existence of duty with details of the standard of conduct. For example, in *Davis v. Westwood Group,* 420 Mass. 739, 652 N.E.2d 567 (1995), the court framed the issue as whether the business owed a duty to construct a pedestrian bridge or otherwise make alterations to a state highway for protection of the plaintiff. This "combining" of the concepts of duty and standard of care is contrary to the clear direction of our supreme court in *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 355, 706 P.2d 364, 367 (1985). There, the court explained that the duty is to be analyzed on the basis of the parties' relationship, not on the details of their conduct. *Id.*

Second, most of those cases deal primarily with whether a landowner has the duty to control an adjacent public road.[4] Stephens has not alleged that Bashas had a duty to control 35th Avenue. He instead contends that Bashas should have maintained its own premises so that space would have been available for him to open his doors off the roadway. When the activities conducted on the business premises affect the risk of injury off-premises, the landowner may have an obligation "to correct the condition or guard against foreseeable injuries." *Ember,* 490 N.E.2d at 772. "This is particularly true when the activity involves use of the adjoining way to the business's commercial advantage." *Id.* at 773.

Stephens was Bashas' business invitee. Bashas had an affirmative duty to use reasonable care in conducting its business and maintaining its premises to avoid causing injury to Stephens. The trial court erred in finding otherwise.

**B.  Standard of Care/Breach of Duty**

■ Because the trial court ruled that Bashas owed no duty to Stephens, it did not reach the issue of breach. In most cases, whether the defendant's conduct constituted breach is a question for the trier of fact. *E.g., Rudolph,* 182 Ariz. at 626, 898 P.2d at 1004; *Lasley,* 179 Ariz. at 586, 880 P.2d at 1132. Only in appropriate cases may the court determine as a matter of law that no breach occurred. *Rudolph,* 182 Ariz. at 626, 898 P.2d at 1004; *Lasley,* 179 Ariz. at 586, 880 P.2d at 1132. We do not find this to be such a case. We therefore do not reach on appeal the issue of whether Bashas breached its duty. We note only that Stephens appears to have presented sufficient evidence on the issues of foreseeability and conduct creating an unreasonable risk of harm to avoid summary judgment on this issue.

**C.  Causation**

■ To establish fault, a plaintiff must prove that the defendant's negligence proximately caused the plaintiff's injury. *Ferguson v. Cash, Sullivan and Cross Ins. Agency, Inc.,* 171 Ariz. 381, 386, 831 P.2d 380, 385 (App.1991). Although the determination of proximate cause is ordinarily for the jury, the court may be able to conclude as a matter of law that a defendant did not cause a plaintiff's injury. *Id.*

■ Here, the trial judge determined as a matter of law that Stephens' injuries were

---

3.  *See, e.g., Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429 (7th Cir.1978) (business had no duty to protect invitee from criminal attacks on adjacent street); *Owens v. Kings Supermarket,* 198 Cal.App.3d 379, 243 Cal.Rptr. 627 (1988) (store had no duty to customer injured on adjacent street); *Nevarez v. Thriftimart, Inc.,* 7 Cal. App.3d 799, 87 Cal.Rptr. 50 (1970) (supermarket not liable for injuries to child hit by car when running across street to store's grand opening); *Laufenberg v. Golab,* 108 Ill.App.3d 133, 63 Ill. Dec. 875, 438 N.E.2d 1238 (1982) (race track owners had no duty to safeguard person crossing the street adjacent to premises); *State v. Flanigan,* 489 N.E.2d 1216 (Ind.App.1986) (flea mar-

ket operator had no duty to customers to provide traffic control on adjacent highway); *Davis v. Westwood Group,* 420 Mass. 739, 652 N.E.2d 567 (1995) (no duty of racing park owner to install pedestrian walkway or traffic lights on public road); *Ferreira v. Strack,* 636 A.2d 682 (R.I.1994) (church had no duty to control traffic on adjacent street).

4.  *Mitchell,* 573 F.2d 429, is somewhat unique, however. It instead involved whether a landowner has a duty to reasonably guard an invitee against criminal attacks on an adjacent public thoroughfare.

caused solely by the combined negligence of Stephens and Chavez. The court erred in this determination. Whether the conditions on Bashas' property and instructions given by its employee caused Stephens to park in the center lane and open his truck doors presents a disputed question of material fact, precluding summary judgment. In addition, any negligence by Chavez and/or Stephens does not relieve Bashas of potential liability.

■ "When a defendant's actions increase the foreseeable risk of a particular harm occurring through the conduct of a third party, that defendant is not relieved of liability." *Petolicchio v. Santa Cruz County Fair and Rodeo Ass'n, Inc.*, 177 Ariz. 256, 263, 866 P.2d 1342, 1349 (1994). If the trier of fact determines that Bashas gave Stephens no other alternative but to open his truck doors while parked in the center lane, Bashas' actions will have increased the foreseeable risk that a trucker opening doors in the roadway might be hit by an errant vehicle driven by a negligent third party. Nor would Chavez's negligence break the proximate causation chain under which Bashas could have some liability for Stephens' injuries. We therefore reject Bashas' contention that as a matter of law its actions were not a proximate cause of Stephens' injuries.

## III. CONCLUSION

Bashas owed a duty to Stephens to conduct its business and maintain its warehouse premises so as to not subject him to an unreasonable risk of harm. Whether Bashas breached this duty and whether its actions or omissions were a cause of Stephens' injuries are questions of fact for a jury. We therefore reverse summary judgment in Bashas' favor and remand for proceedings consistent with this decision.

TOCI, P.J., and NOYES, J., concur.