250 P.3d 245

Adam **WICKHAM**, an Arizona resident; Linda Wickham and Richard Wickham, individually and as parents of Adam Wickham, Plaintiffs/Appellants,

v.

Tricia **HOPKINS**, an Arizona Resident; Jan and Larry Hopkins, Individually and as parents of Tricia Hopkins, Defendants/Appellees.

No. 1 CA–CV 09–0523.

Court of Appeals of Arizona, Division 1, Department B.

April 19, 2011.

---

Law Offices of David L. Abney, Esq. by David L. Abney, Phoenix, Attorneys for Plaintiffs/Appellants.

Carnahan Perry Hanlon & Hudson PLC by Gary L. Hudson, Jr., Phoenix, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 Appellant Adam Wickham was injured in an incident near the home of Appellees Larry, Jan, and Tricia Hopkins. Wickham now appeals the summary judgment granted in favor of the Hopkinses. Because we agree with the trial court that the Hopkinses owed Wickham no duty after he left their premises, we affirm the summary judgment.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 In March 2006, Larry and Jan Hopkins went on vacation. Before leaving town, they hired Jan's adult co-worker, Elizabeth Mueller, to stay at their home while they were gone and watch over Tricia, their fourteen-year-old daughter. Mueller agreed to spend nights at the Hopkinses' home and make sure Tricia got to and from school.

¶ 3 On Friday, March 24, Mueller arrived at the Hopkinses' home after work but left at about 6:00 p.m. for dinner with friends. While Mueller was gone, Tricia invited several friends to the home. Her friends invited several others. Eventually there was a large

party of approximately 70 young people drinking beer, listening to music, and talking.

¶ 4 Wickham, eighteen-years-old at the time, arrived at the party with several friends and began drinking and socializing. He was in the backyard when he learned that Azran Dulara was coming to the party and intended to fight one of Wickham's friends. A few minutes later, Wickham walked into the kitchen, saw Dulara, and a verbal confrontation ensued. They argued for a few moments before Wickham and his friends decided to leave the party.

¶ 5 Wickham walked out to the street and was met by Dulara and nine of Dulara's friends. Dulara approached Wickham and punched him in the face. Wickham picked up a river rock from near the curb as if to throw it at Dulara, then put it down and began walking toward his friend's vehicle. As he did so, one of Dulara's friends, Andrew Carvella, threw a rock that struck Wickham on the left side of his face, knocking him unconscious and causing serious injury.

¶ 6 Wickham and his parents[1] filed this action against Larry, Jan, and Tricia Hopkins, as well as against Dulara and Carvella and their parents. Wickham sought damages from the Hopkinses based on negligence, negligent supervision, and premises liability, and also alleged that the Hopkinses were vicariously liable for Mueller's negligence. The Hopkinses moved for summary judgment, arguing they could not be liable for Wickham's injuries because (1) he was a licensee while on their property and was not injured by a hidden peril or by their willful or wanton conduct and (2) they owed him no duty when he was on the street in front of their home. The trial court granted the motion, stating:

> The question of duty in the undisputed factual context of this case is one of law for this Court. The Court declines Plaintiffs' invitation to extend a duty of care by a homeowner or their minor child who hosts a party to a person who attended the party who is *injured off the premises* by the conduct of others who had left the premises.

(Emphasis in original.) Wickham timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## ANALYSIS

¶ 7 We review a grant of summary judgment de novo and view the facts in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). Summary judgment may be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). Summary judgment is appropriate only "if the facts produced in support of the [other party's] claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.* at 309, 802 P.2d at 1008.

¶ 8 "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007) (citation omitted). Duty is an "obligation, recognized by law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (quoting W. Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971)). "The existence of a duty is a question of law that we review de novo." *Diaz v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 12, 230 P.3d 718, 721 (App. 2010) (citing *Ritchie v. Krasner*, 221 Ariz. 288, 295, ¶ 11, 211 P.3d 1272, 1279 (App. 2009)). The other elements of negligence are generally factual issues that should be decided by a jury. *Id.* "Whether the defendant

---

1. The legal arguments asserted by Adam Wickham and his parents are identical. For ease of reference, we will usually refer simply to "Wickham" in this opinion.

owes the plaintiff a duty of care is a threshold issue." *Gipson,* 214 Ariz. at 143, ¶ 11, 150 P.3d at 230; *Diaz,* 224 Ariz. at 338, ¶ 12, 230 P.3d at 721. A negligence action cannot be maintained absent a duty. *Diaz,* 224 Ariz. at 338, ¶ 12, 230 P.3d at 721.

¶ 9 Wickham contends that the Hopkinses owed him a duty to protect him from injury resulting from the party at the Hopkinses' home.

### The Existence of a Duty to Wickham *on* the Premises

¶ 10 We address first Wickham's contention that the Hopkinses owed him a duty of care under premises liability law. This argument fails, initially, because it is undisputed that Wickham was not injured on the Hopkinses' premises. Even if Wickham had been injured on the Hopkinses' premises, however, the Hopkinses did not breach the limited duty owed by them to Wickham as a licensee on their premises.

¶ 11 In Arizona, the duty owed by a landowner to an entrant on the property is determined by the status of the entrant as an invitee, licensee, or trespasser. *See generally Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 142–43, 639 P.2d 330, 332–33 (1982); *Shannon v. Butler Homes, Inc.,* 102 Ariz. 312, 316–17, 428 P.2d 990, 994–95 (1967). Wickham urges us to abolish the distinction between the duties owed to invitees and licensees, but the separate duties owed to invitees and licensees have long been recognized by our supreme court and our court. *See Woodty v. Weston's Lamplighter Motels,* 171 Ariz. 265, 268, 830 P.2d 477, 480 (App.1992) (listing Arizona Supreme Court and Court of Appeals opinions applying entrant distinctions). As an intermediate court of appeals, we are not in a position to abolish or change the common law distinctions. *See Green v. Garriott,* 221 Ariz. 404, 413, ¶ 36, 212 P.3d 96, 105 (App.2009) (noting court of appeals does not "have the authority to overrule or disregard our supreme court").

¶ 12 When Wickham entered the Hopkinses' property, he was a social guest, and as such, a licensee. *See Shannon,* 102 Ariz. at 316, 428 P.2d at 994 ("although a

social guest may be on his host's property as the result of an express invitation, he is only a licensee and is not entitled to the same care for his safety as one who is on the property of another as a business invitee"). Accordingly, the Hopkinses, and Mueller as their alleged agent, owed Wickham no duty "other than to refrain from knowingly letting him run upon a hidden peril or wantonly or wil[l]fully causing him harm." *Id.* Wickham was not injured by a known, hidden peril nor by the Hopkinses' or Mueller's wanton or willful conduct. Therefore, even if Wickham had been injured on the Hopkinses' premises, the limited duty owed by the Hopkinses to Wickham as a licensee on their property would not extend to this incident.

### The Existence of a Duty to Wickham *off* the Premises

¶ 13 Wickham alternatively argues the Hopkinses owed him a greater duty—that of reasonable care—after he left the property. We disagree.

¶ 14 The leading case from our supreme court addressing the determination of duty is *Gipson.* We analyze Wickham's remaining duty arguments using analytical principles from *Gipson.*

¶ 15 The issue presented in *Gipson* was whether persons who are prescribed drugs owe a duty of care when they illegally give their drugs to others. 214 Ariz. at 142, ¶ 1, 150 P.3d at 229. The Arizona Supreme Court considered two factors in evaluating the existence of a duty: (1) the relationship between the parties and (2) public policy considerations. *Id.* at 144–47, ¶¶ 18–31, 150 P.3d at 231–34. The court specifically rejected foreseeability as a factor in determining duty. *Id.* at 144, ¶ 15, 150 P.3d at 231. It explained that "[d]uties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 145, ¶ 18, 150 P.3d at 232. In addition, the common law imposes a duty in various categorical relationships, such as the landowner-invitee relationship, the tavern owner-patron relationship, and relationships that create a duty to control the actions of another. *Id.* at ¶ 19. The court cautioned, however, against determining duty

based on a "fact-specific analysis" of the relationship between the parties, emphasizing that the issue of duty is a legal matter rather than a factual matter. *Id.* at ¶ 21. Public policy, the other factor used to determine the existence of a duty, may be found in state statutes and the common law. *See id.* at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4.

¶ 16 With these foundational principles in view, we examine the relationship between the parties in this case and any applicable public policy considerations.

### The Relationship Between The Parties

■ ¶ 17 In this case, the relationship between the parties did not create a duty on the part of the Hopkinses to act in some way for the protection of Wickham. While Wickham was on the premises, the landowner-licensee relationship existed, triggering the limited duty owed by landowners or occupiers to licensees. But that relationship ceased when Wickham walked off the Hopkinses' property onto the street. We are unable to identify any duty-creating relationship between Wickham and the Hopkinses at the time of Wickham's injury.

¶ 18 Contending the Hopkinses owed a duty to provide him a reasonably safe means of ingress and egress to and from the premises, Wickham cites several cases including *Nicoletti,* 131 Ariz. 140, 639 P.2d 330, *Stephens v. Bashas' Inc.,* 186 Ariz. 427, 924 P.2d 117 (App.1996), and *O'Rielly Motor Co. v. Rich,* 3 Ariz.App. 21, 411 P.2d 194 (1966). These cases all involve business invitees, however, rather than social guests or licensees. *Nicoletti,* 131 Ariz. at 143, 639 P.2d at 333; *Stephens,* 186 Ariz. at 430, 924 P.2d at 120; *O'Rielly Motor Co.,* 3 Ariz.App. at 23, 411 P.2d at 196. Because the duty owed to business invitees is significantly greater and more comprehensive than the duty owed to licensees, these cases are not persuasive here.

¶ 19 Wickham further argues that Larry and Jan Hopkins owed a duty of reasonable care because, by hiring Mueller, they voluntarily assumed a duty of keeping Tricia from hosting a party in their absence. In making this argument, Wickham relies on *Lloyd v. State Farm Mut. Auto. Ins. Co.,* 176 Ariz. 247, 860 P.2d 1300 (App.1992). We explained in *Lloyd* that a person could voluntarily and gratuitously undertake a relationship that gives rise to a duty of care: "When a person voluntarily undertakes an act, even when there is no legal duty to do so, that person must perform the assumed duty with due care and is liable for any lack of due care in performing it." *Id.* at 250, 860 P.2d at 1303. Our supreme court has recently agreed with this proposition, reiterating that "the common law imposes a duty of reasonable care on a party who voluntarily undertakes to protect persons or property from physical harm." *Lips v. Scottsdale Healthcare Corp.,* 224 Ariz. 266, 268, ¶ 10, 229 P.3d 1008, 1010 (2010) (citing Restatement (Second) of Torts § 323 (1965)).

■ ¶ 20 This "voluntary assumption of a duty" relationship does not apply here, however, because there are no facts presented that indicate any voluntary undertaking by the Hopkinses or Mueller to protect Wickham after he left their premises. In contrast to these facts, the insurance company in *Lloyd* offered to defend its insured and undertook the defense, even though it was not obligated to do so. 176 Ariz. at 250–51, 860 P.2d at 1303–04. This was an undertaking by the insurer *directly to the insured,* and the insurer rendered services *directly to the insured. Id.* Here, there is no evidence that Wickham talked to the Hopkinses or Mueller or otherwise received any commitment that the party would be chaperoned, supervised, peaceful, free of alcohol, or devoid of bad actors. Wickham acknowledged that he never asked Tricia to protect him, nor did he expect that she was going to protect him that night. There is also no evidence that the Hopkinses or Mueller undertook to provide for the safety of Wickham or any other guests at the party after they had departed the premises.[2]

2. We further note that, even if Wickham had asked directly and specifically for help, it does not inevitably follow that a duty arose or existed. As our supreme court stated in *Lips:*

> In general, however, a duty of care is not created by a mere request for help, or by unilaterally being told by another that a duty exists. *See La Raia [v. Superior Court,* 150

¶ 21 Wickham also cites Restatement (Second) of Torts §§ 323 and 324A (1965), both of which, if applicable, impose duties on parties who voluntarily undertake to render services to others. As already noted, there is no evidence showing that the Hopkinses or Mueller undertook to provide for Wickham's safety following his departure from the Hopkinses' premises. We do not find these Restatement sections to be applicable here.

¶ 22 Additionally, we perceive that Wickham's position is based, at least in part, on the concept that the Hopkinses and Mueller should have foreseen and taken steps to avoid the risks that may be created from an unauthorized Friday night party with teenagers, young adults, and beer. Historically, foreseeability of risk or harm was a factor that courts would consider in determining if a duty existed. *Gipson*, 214 Ariz. at 144, ¶ 15, 150 P.3d at 231 (recognizing that prior cases had created confusion regarding the extent to which foreseeability should be considered when determining duty). Our supreme court in *Gipson*, however, declared unequivocally that foreseeability is no longer a factor used to decide if a duty exists. *Id.* Accordingly, we cannot base the existence of a duty on the asserted foreseeability that someone could be hurt in an altercation on the street as a result of the party at the home.

¶ 23 We conclude that no relationship existed between the Hopkinses (including their alleged agent, Mueller) and Wickham that created a duty of reasonable care toward Wickham at the time of this incident.

### Public Policy

¶ 24 Our supreme court in *Gipson* held that public policy may support the recognition of a duty of care. 214 Ariz. at 145, ¶ 23, 150 P.3d at 232. Public policy may be found in state statutory laws or the common law. *Id.* at 146 n. 4, ¶ 24, 150 P.3d at 233 n. 4.

¶ 25 Wickham has not cited, nor have we found, any applicable statutes that might create or impose a duty on the part of the Hopkinses and Mueller for Wickham's safety at the time and location of this incident.

¶ 26 Furthermore, Wickham has not submitted evidence establishing that the Hopkinses or Mueller furnished the alcohol consumed at the party. *Cf. Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 256, 866 P.2d 1330, 1342 (1994) (finding a duty existed when fraternity members furnished alcohol to underaged consumers). Wickham testified that he did not bring alcohol to the party, nor was he aware of the source of the alcohol. Tricia Hopkins testified that she too was unaware of the source of the alcohol, and she maintained that she did not provide it.

¶ 27 In arguing that we should abandon the historic premises liability categories of duty based on entrant status, Wickham has argued that the common law should provide a duty of reasonable care under these circumstances. *See supra* ¶¶ 11–12. But we cannot reject the historic entrant status duties, as noted above. Nor is it logical that the Hopkinses and Mueller would owe *a greater duty* to Wickham after he left the premises. We find no public policy in Arizona's premises liability common law that supports the imposition of a duty here.

¶ 28 In *Ontiveros*, our supreme court noted that "every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others." 136 Ariz. at 509, 667 P.2d at 209 (internal citations omitted). In light of this statement, we have considered whether the Hopkinses or Mueller created a situation which posed an unreasonable risk of harm to Wickham. Even assuming the Hopkinses and Mueller played a role in providing a location for an unsupervised party where young people socialized and consumed alcohol, the record in this case does not support imposition of a duty based on public policy derived from statute or com-

Ariz. 118, 121, 722 P.2d 286, 289 (Ariz.1986)] (explaining that "the common law generally refused to impose a duty upon one person to give aid to another"); *Chiney v. Am. Drug Stores, Inc.*, 21 S.W.3d 14, 16 (Mo.App.2000) ("A mere request for assistance does not create a legal duty to help another."); *accord* Restate-

ment (Second) of Torts § 314 (1965) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). 224 Ariz. at 269, ¶ 14, 229 P.3d at 1011.

mon law. Merely providing the location for a social gathering does not automatically implicate a public policy creating a duty to take action to protect Wickham after he left the premises. Nor did providing a location for the party create an unreasonable risk of harm to Wickham.

¶ 29 We conclude that Wickham has presented no compelling public policy argument for imposing a duty of reasonable care on the Hopkinses or Mueller to protect Wickham after he left the premises.

## CONCLUSION

¶ 30 For these reasons, we affirm the summary judgment in favor of the Hopkinses.

CONCURRING: PATRICIA K. NORRIS and MAURICE PORTLEY, Judges.