IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KENNETH RITCHIE and SALLY KATHLEEN RITCHIE, husband and
wife, *Counterclaim Plaintiffs/Appellants*,

*v.*

TIM COSTELLO and JANE DOE COSTELLO, husband and wife; ALECK
GRADIJAN and JANE DOE GRADIJAN, husband and wife;
COTTONWOOD MUNICIPAL AIRPORT; COTTONWOOD AIRPORT
COMMISSION; COTTONWOOD POLICE DEPARTMENT; CITY OF
COTTONWOOD; DIANE JOENS; KAREN PFEIFER; TIM ELINSKI;
DAROLD SMITH; DUANE KIRBY; LINDA NORMAN; TERENCE
PRATT; JAMES MOENY; MARV LAMER; DOUG PALMQUIST; and BILL
TINNIN, *Counterclaim Defendants/Appellees*.

No. 1 CA-CV 14-0185
FILED 8-25-2015

Appeal from the Superior Court in Yavapai County
No.  V1300CV201180212
The Honorable Joseph C. Butner III, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Curry, Pearson & Wooten, PLC, Phoenix
By Michael W. Pearson, Kyle B. Sherman
*Counsel for Counterclaim Plaintiffs/Appellants*

Gallagher & Kennedy, P.A., Phoenix
By Kevin D. Neal, Jennifer A. Cranston, Kimberly G. Allen
*Counsel for Counterclaim Defendants/Appellees*

---

## OPINION

Presiding Judge Maurice Portley delivered the Opinion of the Court, in which Judge John C. Gemmill and Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

¶1        Kenneth Ritchie ("Ritchie") appeals a summary judgment in favor of the City of Cottonwood, Cottonwood Municipal Airport, other municipal entities and individuals (collectively, "Cottonwood Airport"). Ritchie contends that the trial court erred by ruling, as a matter of law, that the Cottonwood Airport did not owe a duty of care to him when he had a mid-air collision with a hot air balloon. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The City of Cottonwood was the sponsor of the Cottonwood Airfest, an annual event featuring hot air balloons lifting off early in the morning and other activities at the Cottonwood Municipal Airport. A flyer was distributed specifically inviting hot air balloonists to attend the Airfest and asking them to pass the word to other balloonists. The flyer also asked the balloonists to RSVP and provided a telephone number and email address.

¶3        The day before the 2010 Airfest, Ritchie, a retired doctor, and his son, Scott Ritchie, met with Scott Nichol, a hot air balloon pilot, and planned to have Ritchie fly his powered paraglider (a one-person ultralight aircraft) and take mid-air photos of Nichol's balloon, using mid-air communications. The Ritchies did not, however, RSVP that their paragliders would fly in the Airfest, nor did they advise any officials of their plan to photograph the Nichols' balloon.

¶4        Early on the morning of the October 16, 2010 Airfest, the Ritchies went to the airport and told a volunteer they were "participants." They went to the hot air balloon launching area, but did not tell the volunteer they would be flying their powered paragliders. In fact, no

2

Airfest official expected powered paragliders to participate prior to their arrival. As a result, Ritchie did not receive, nor participate in any pre-flight safety briefing from any Airfest official.

**¶5**    When Airfest officials saw the Ritchies attempting to set up their powered paragliders to launch with the hot air balloons, they told the Ritchies to move to a different location because of other traffic. The Cottonwood Municipal Airport is an uncontrolled airport; it does not have an air traffic control tower or other means to control air traffic leaving, landing or flying around the airport.[1] After moving their launch location three times, the Ritchies were able to safely launch their paragliders.

**¶6**    Ritchie climbed to 1500 feet and had been flying for about thirty minutes when his paraglider collided with a hot air balloon about a quarter-mile east of the airport. Both aircraft crashed, and Ritchie and the people in the basket of the balloon were injured. One of the balloon's passengers, John Biddulph, D.D.S., filed a lawsuit against various Cottonwood municipal entities and individuals, as well as Ritchie and his spouse.[2] The balloon's pilot, E. Pell Wadleigh, D.D.S., and his spouse, along with passenger, Susan Evans, and her spouse, also filed suit. Ritchie, in turn, filed a cross-claim against Cottonwood in the Biddulph case and a counterclaim against Cottonwood in the other case. Ritchie subsequently filed a motion for partial summary judgment in the consolidated matters, and Cottonwood Airport filed a cross-motion seeking the dismissal of Ritchie's claims with prejudice. After argument and considering the record, the trial court granted summary judgment in favor of Cottonwood Airport. Ritchie appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).[3]

---

[1] Uncontrolled airport procedures are dictated by Federal Aviation Administration regulations. *See generally* U.S. Dep't of Transp. Fed. Aviation Admin., *Aeronautical Information Manual: Official Guide to Flight Information and ATC Procedures* (2014); Fed. Aviation Admin., Advisory Circular, AC No. 90-66A, Recommended Standard Traffic Patterns and Practices for Aeronautical Operations at Airports Without Operating Control Towers (Aug. 26, 1993).

[2] After Dr. Biddulph passed away, the personal representative of his estate filed an amended complaint on behalf of the estate, and his daughter filed suit as his surviving daughter.

[3] We cite the current version of the statute unless otherwise noted.

## DISCUSSION

¶7        In reviewing a motion for summary judgment, we determine de novo whether any genuine disputes of material fact exist and whether the trial court properly applied the law. *See Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *AROK Constr. Co. v. Indian Constr. Svcs.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App. 1993). Summary judgment will be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

¶8        "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007) (citation omitted). Duty is an "'obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.'" *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (quoting W. Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971)). "The existence of a duty is a question of law that we review de novo." *Diaz v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 12, 230 P.3d 718, 721 (App. 2010) (citing *Ritchie v. Krasner*, 221 Ariz. 288, 295, ¶ 11, 211 P.3d 1272, 1279 (App. 2009)). The existence of a duty must be based on either the relationship between the parties or established by public policy. *Gipson*, 214 Ariz. at 144–45, ¶¶ 18, 22, 150 P.3d at 231–32. And the duty of care "may arise from a special relationship based on contract, family relations, or conduct undertaken by the defendant, or may be based on categorical relationships recognized by the common law, such as landowner-invitee. Public policy used to determine the existence of a duty may be found in state statutory laws and the common law." *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 336, ¶ 12, 275 P.3d 632, 635 (App. 2012) (citations omitted).

¶9        Ritchie contends that the trial court erred as a matter of law by finding that the Cottonwood Airport did not owe him a duty of care as an invitee when the mid-air collision occurred. Although agreeing with the court's determination that Cottonwood owed him a duty at the airport, he disagrees that the duty did not continue after he became airborne or that it was limited to the geographical boundaries of the airport, and argues that

Cottonwood had a duty to maintain reasonably safe conditions for all aircraft using the airport during Airfest. We disagree.

¶10        Assuming that Ritchie, the paraglider, was a business invitee, the Cottonwood Airport owed Ritchie a duty to maintain the airport premises in a reasonably safe manner. *See Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142-43, 639 P.2d 330, 332-33 (1982). The duty also includes the obligation to use reasonable care to provide the invitee with a reasonably safe means of ingress and egress. *Id.* at 143, 639 P.2d at 333; *Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430, 924 P.2d 117, 120 (App. 1996). An operator of an airport "owes a duty to the public to maintain *reasonably safe* conditions for aircraft using the airport, and that duty extends to runways." *Catchings v. City of Glendale*, 154 Ariz. 420, 425, 743 P.2d 400, 405 (App. 1987) (citations omitted); *see also Mills v. Orcas Power & Light Co.*, 355 P.2d 781, 784-86 (Wash. 1960) (finding that the airport operator has the primary obligation to warn landing or departing airplanes about structures that may obstruct the proper general take-off or landing flight way since it has a duty to provide safe premises for airplane use).

¶11        A landowner's obligation to invitees, however, is not limitless. *See* Restatement (Second) of Torts § 314A cmt. c (1965) (noting that the duty ceases when the person ceases to be an invitee). Once an invitee safely leaves the premises, the landowner-invitee relationship terminates, as does the landowner's duty to the invitee. *See Riddle v. Ariz. Oncology Servs., Inc.*, 186 Ariz. 464, 468–69, 924 P.2d 468, 472–73 (App. 1996) (affirming dismissal of claim against employer arising from auto accident that occurred after employer sent impaired employee home early); *Wickham v. Hopkins*, 226 Ariz. 468, 472, ¶ 17, 250 P.3d 245, 249 (App. 2011) (holding that the landowner-licensee relationship ceased when the licensee left the landowner's property); *see also Price v. Canadian Airlines*, 429 F. Supp. 2d 459, 465–66 (D.N.H. 2006) (granting airline summary judgment for claim arising from injury in airport after passenger was safely off the airplane and away from the airline gate).

¶12        Here, Ritchie came to the Airfest with his son, and both paragliders were moved around to avoid other airport traffic. Like the hot air balloons that safely launched, Ritchie successfully launched and flew his paraglider for about one-half hour before the accident. As a result, he ceased to be an invitee after successfully getting into the air and moving away from the airport. The mid-air collision did not happen when he was

attempting to take off or land his paraglider at the uncontrolled airport.[4] *Compare Stephens*, 186 Ariz. at 430, 924 P.2d at 120 (noting that a landowner owed a duty to truck driver while he was attempting to access defendant's property to deliver goods) *with Traudt v. City of Chicago*, 240 N.E.2d 188, 191 (Ill. App. Ct. 1968) (affirming dismissal because the decedent was not using the airport's ingress or egress at the time he landed in the lake adjacent to the airport and drowned). Instead, the accident occurred in the air while Ritchie was taking photographs and did not see the Wadleigh hot air balloon. Consequently, based on the record before the trial court, the Cottonwood Airport did not owe a duty to Ritchie.

¶13 Ritchie also contends that the Cottonwood Airport had a duty to warn him of dangerous conditions. As applicable here, any duty to warn arose from the invitee relationship. *See Gipson*, 214 Ariz. at 144–45, ¶¶ 18, 22, 150 P.3d at 231–32. After Ritchie successfully left the airport, he was no longer an invitee; as such, the Cottonwood Airport did not have a duty to warn him of the obvious – that there were many hot air balloons in the sky floating in the currents of wind and he had to be careful to avoid the risk of colliding with any of them. *See Flowers v. K-Mart Corp.*, 126 Ariz. 495, 497-98, 616 P.2d 955, 957-58 (App. 1980); *see also* Restatement (Second) of Torts § 343A (1965) ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.").

¶14 Equally unpersuasive is Ritchie's argument that public policy supports holding that the Cottonwood Airport owed him a duty during his entire flight. In *Wickham*, we noted that hosting a "social gathering does not automatically implicate a public policy creating a duty to take action to protect [a guest] after he left the premises." 226 Ariz. at 474, ¶ 28, 250 P.3d at 251. Additionally, exposing event organizers to that kind of liability would have a chilling effect on municipal-sponsored social gatherings – a result that we have deemed contrary to public policy. *See Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 475–76, ¶¶ 19–21, 323 P.3d 753, 758–59 (App. 2014) (rejecting public policy argument that would impose duty on event organizers for portions of event outside their control). Finally, the Cottonwood Airport did not have the ability to control the

---

[4] Although it was asserted at our oral argument that Ritchie was planning to return to the airport, and his reply brief asserts that he was in a flight pattern to land at the airport, there was no admissible evidence presented to the trial court that suggested Ritchie was in the general process of attempting to land or landing at the airport at the time of the accident.

airspace where the aerial accident took place. *See* 14 C.F.R. § 91.113 (providing right-of-way rules for aircraft); 14 C.F.R. § 91.126 (listing regulations for the airspace around an uncontrolled airport); *see also Bishop v. City of Chicago*, 257 N.E.2d 152, 155 (Ill. App. Ct. 1970) (noting that an airport operator as possessor of land does not owe a duty of care to business invitees who are outside the physical premises over which airport operator has control); *Clark v. New Magma Irrigation & Drainage Dist.*, 208 Ariz. 246, 251, ¶ 21, 92 P.3d 876, 881 (App. 2004) (holding that a defendant easement holder did not owe duty to protect an invitee from a fence which the defendant had no right to control).[5] As a result, the trial court did not err in granting summary judgment.

## CONCLUSION

¶15        For the foregoing reasons, we affirm the judgment.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[5] Ritchie also contends that a defendant is not released from liability if his actions increase the foreseeable risk of harm through the actions of a third party. Our supreme court has, however, specifically stated that courts may not consider foreseeability when deciding if a duty exists. *Gipson*, 214 Ariz. at 144, ¶ 15, 150 P.3d at 231.